## MARY TISDALE *vs.* JOHN JONES and others.

Judgments recovered against husband and wife during coverture and for a cause of action accruing after marriage, will not bind the wife's separate estate.

A contract entered into between husband and wife, before marriage, although void at law, will be recognized and enforced in equity.

Although an ante-nuptial agreement still rests in covenant, equity will enforce it; treating as done that which the husband agreed to do; and this even against creditors and purchasers.

By an agreement executed prior to marriage, and in contemplation thereof, the husband, for himself and his heirs, covenanted with a trustee of the wife that if the marriage should take place, he and his wife would convey, settle and assure certain premises, the separate estate of the wife, to the trustee, for the use and behoof of the wife for and during her life ; and if she should die leaving heirs of her body, then the premises should go to the use of the husband for life, and then to the heirs of the wife's body. If the wife should die within ten years without heirs of her body living at her death, then one half of the premises should go to the husband, and the other half to the wife's collateral relatives. But if the wife should not die, and should not have heirs of her body living, within ten years, and the husband should survive, then the whole premises should go to him for life, remainder to the wife's heirs. No conveyance pursuant to this covenant was ever executed. A judgment being recovered against husband and wife, for work and labor done upon the separate estate, the premises were sold by the sheriff upon an execution issued thereon.

*Held* that in equity the husband had no equitable interest in the premises, although there was an apparent legal interest in him. And that it was in the power of the court to control the judgment, so as to protect the interests of the wife against the husband and all others claiming under him, with notice of the wife's rights.

*Held, also,* that the title of the husband being *prima facie* valid, a sale of the premises upon an execution issued on the judgment, followed by the sheriff's certificate of sale, transferred to the purchaser an apparently valid title, to protect herself against which the wife must commence an action and establish the ante-nuptial agreement. That this created a *cloud on the wife's title,* which a court of equity would interfere to remove.

THIS was an appeal from a judgment entered on the report of a referee, dismissing the plaintiff's complaint, and from an order of the special term charging the plaintiff's separate estate with the costs of the suit. The facts are fully stated in the opinion of the court.

*D. Tisdale*, for the appellant.

*J. W. Breed*, for the respondent.

*By the Court*, MULLIN, J.   The plaintiff became owner of the property in question in February, 1839, and was married to Daniel Tisdale in 1845.   Before the marriage, and in contemplation of it, the plaintiff, the said Daniel Tisdale, and Jonathan Hurlburt as trustee for the plaintiff, entered into an agreement in writing under seal, wherein the said Daniel, for himself and his heirs, covenanted with said Hurlburt that if the marriage should be solemnized he and the plaintiff would convey, settle and assure said premises to the said Hurlburt, to the use and behoof of the plaintiff for and during her natural life; and if the plaintiff should die leaving heirs of her body, then said premises should go to the use of said Daniel during his life, and then to the heirs of the plaintiff's body.   It was also provided that if the plaintiff should die within ten years, without heirs of her body living at her decease, then one half of the premises should go to said Daniel and the other half to the plaintiff's collateral relatives.   But if the plaintiff should not die and should not have heirs of her body living, within ten years, and said Daniel should survive, then the whole premises should go to him during his life, and at his death to the plaintiff's heirs.   No conveyance pursuant to the covenant was ever executed.   The trustee named in the agreement died in 1849 or 1850.   On the 23d of January, 1850, the defendant Jones recovered a judgment for $21.82 damages and costs, before a justice of the peace, against the plaintiff and her husband, in an action for work and labor done on the plaintiff's premises, on the employment of her husband, after the marriage.   On the 4th of February, 1856, a judgment was recovered against the plaintiff and her husband, in an action against them, before a justice of the peace, on the aforesaid judgment, for $33.11, damages and costs.   An appeal was taken, in the last men-

tioned action, to the county court of Oneida county, and the judgment was affirmed, with $47.60 costs. On the 8th of January, 1858, an execution was issued on said judgment to the sheriff of Oneida, and the said sheriff, by virtue thereof, sold the premises in question to the defendant Downer, for $59, and gave him a certificate of such sale as required by law. The plaintiff commenced this action to set aside this certificate as a cloud on her title, and to strike her name from the record of the several judgments rendered against her. The referee dismissed the complaint with costs, and afterwards the special term, on motion, charged the costs on the plaintiff's separate estate, and from this judgment the appeal is brought.

The judgments before the justices of the peace and county court having been recovered during coverture, and for a cause of action accruing after marriage, did not bind the wife's separate estate, and hence her lands could not be sold upon them. The marriage being prior to the passage of the act of 1848, the husband became entitled to a life estate in the premises, unless the ante-nuptial contract defeats it. Laying this contract out of view, for the present, the life estate of the husband was bound by the judgments and liable to be sold to satisfy them.

The question then is, as to the effect of the ante-nuptial contract upon the husband's interest in the land. If that contract is valid and binding, then the husband has no interest that could be sold on the judgments; but on the other hand, if that contract is invalid, then the husband had an interest which was liable to execution, and was properly sold. It cannot be doubted at this day that a contract entered into between husband and wife before marriage, although void at law, will be recognized and enforced in equity. Justice *Story,* in his Commentaries on *Equity Jurisprudence,* § 1370, says: " An agreement entered into between husband and wife before marriage, for the mutual settlement of their estates, or of the estate of either upon the other, upon the marriage, even

Tisdale v. Jones.

without the intervention of trustees, will be enforced in equity, although void at law; for equity will not suffer the intention of the parties to be defeated by the very act which is designed to give effect to such a contract. On this ground, where a wife, before marriage, gave a bond to her intended husband, that in case the marriage took effect she would convey her estate to him in fee, the bond was, after the marriage, carried into effect in equity, although it was discharged at law." (*Id.* §§ 1371, 2. *Connel* v. *Buckle*, 2 *P. Wms.* 242.) In 2 *Roper on Husband and Wife*, 179, it is said : " The principle applicable to the present case seems to be this ; that the agreement having been made before marriage, at a period when the wife was able to contract, and as it clearly appears to have been the intention of the parties that the wife should reserve to herself a power over her own lands during the coverture, she therefore, and the persons claiming under her appointment, have a right to the interposition of a court of equity, to give full effect to the marriage agreement, and to remove any obstacles which in point of form, or otherwise, invalidated the appointment at law; *the more especially since the wife might have obliged the husband to concur in a fine and settlement of the estates, pursuant to his engagements, which a court of equity, according to its well known practice, will consider to have been performed.*" (*See id.* 181 ; 2 *Story's Eq. Jur.* §§ 790, 791; *Dillon* v. *Dillon*, 1 *Ball & Beat.* 89.) In *Campion* v. *Cotton*, (17 *Vesey*, 264,) a bill was filed by a creditor of J. L. deceased against his executor and his widow, to set aside certain deeds and conveyances from the testator to said Charlotte. The wife relied on a settlement made in contemplation of marriage. The master of the rolls says : " I apprehend it to be clear that the husband not only could not controvert her right to any part of the property, but was compellable to do whatever acts might be necessary to invest her with a complete title to it. He has expressly covenanted so to do, and the marriage was a sufficient consideration for the promise." In note 2 to the last

Tisdale *v.* Jones.

case it is said " a settlement by a man previous to his marriage and as an inducement thereto would, if no actual fraud were shown, be sustained even against purchasers, for the wife, in such a case, would be a purchaser for herself and her children." Cases to the same effect might be multiplied indefinitely, but these are sufficient to show that although the ante-nuptial agreement still rests in covenant, yet equity will enforce it, treating as done that which the husband agreed to do, and this too even against creditors and purchasers. It follows that in equity the husband had at the time of the recovery of the judgments no equitable interest in the premises, although there was an apparent legal interest. It is in the power of the court to control the judgments, so as to protect the interest of the wife against the husband and all others claiming under him, with notice of the rights of the wife. The lien of a judgment creditor is always subservient to the equities existing against the debtor.

The next and only remaining question is whether the sale and certificate created a cloud on the plaintiff's title, so as to require the interference of the court to protect it.

When a conveyance or other instrument, which is alleged to cast a cloud on the title, is void on its face, or defective for want of preliminary proceedings which the party claiming under it would be bound to *show*, the court will not interfere, as no cloud is cast on the title to the prejudice of the owner. But when the conveyance causing the cloud is *prima facie* valid, the injured party must furnish proof to remove it. Then a cloud is created within the meaning of that term in a court of equity, and it will interfere to remove it. (*Scott* v. *Onderdonk,* 4 *Kernan,* 9.)

The title of the husband being *prima facie* valid, to the premises in question, the sale and certificate, and the deed in pursuance of the sale, will transfer to the purchaser an apparently valid title, and the plaintiff, to protect herself against it, must commence an action and establish her ante-nuptial

agreement.   She brings herself, therefore, clearly within the case to which I have referred.

The complaint was properly dismissed as to the defendant Breed.   There is no reason shown for making him a party. He neither has nor claims an interest in the judgments or purchase at the sale.   He acted merely as the attorney for Jones, and in that capacity cannot be liable in this suit.

For these reasons I am of the opinion that the judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment reversed as to all the defendants except Breed, and a new trial ordered.   As to Breed, the judgment affirmed with costs of trial as upon a demurrer.

[ONONDAGA GENERAL TERM, January 3, 1860.   *Allen, Mullin* and *Morgan,* Justices.]